IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CORNELL PATRICK MOORE            *

      Claimant            *

v.                                             *            CIVIL ACTION NO.
                                                            2:14-CV-00106-KOB
CAROLYN W. COLVIN,               *
Commissioner of Social
Security                                  *

      Respondent


MEMORANDUM OPINION

I. INTRODUCTION

On December 3, 2010, Cornell Moore, the claimant, filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on July 21, 2008. (R. 15).  He claimed inability to work because of his rheumatoid arthritis, degenerative disc disease, back pain, and post traumatic stress disorder. (R. 165).  The Commissioner denied the claim on January 27, 2011.  After the claimant filed a request for a hearing, the ALJ conducted a hearing on July 12, 2012.

On August 16, 2012, the ALJ determined that the claimant was not disabled, as defined by the Social Security Act, from July 21, 2008, his alleged onset date, to the time of the hearing. (R. 16).  On November 13, 2013, the Appeals Council denied the claimant's request for review; consequently the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1).  The claimant exhausted administrative remedies, and this court

1

has jurisdiction pursuant to 42 U.S.C. §§ 405(g).  For the reasons stated below, this court AFFIRMS the decision of the Commissioner.

## II. ISSUE PRESENTED

The issue before the court is whether substantial evidence supports that the ALJ, in assessing the claimant's physical and mental impairments, (1) properly conducted a residual functional capacity assessment; (2) correctly applied the grid guidelines rather than relying on vocational experts; and (3) appropriately discredited the claimant's treating physician.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No...presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.  However, this court does not review the Commissioner's factual determinations *de novo*.  The court will affirm those factual determinations that are supported by substantial evidence.  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 402 (1971).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational

2

factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(d), 416.927(d). Whether the claimant meets the listing and qualifies for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as substantial evidence exists in the record to support it.

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings."  *Walker*, 826 F.2d at 999.  A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

A person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42. U.S.C. § 423(d)(1)(A).  To make this determination, the Commissioner employs a five-step, sequential evaluation process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments

3

set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20. C.F.R.§ § 404.1520, 416.920.

The ALJ must complete an RFC assessment of each claimant.  Social Security Ruling 96–8p provides:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  The ALJ must first assess the claimant's functional limitations and restrictions and then express his functional limitations in terms of exertional levels. *See Castel v. Comm'r of Soc. Sec.,* 355 F. App'x 260, 263 (11th Cir.2009); *Freeman v. Barnhart,* 220 F. App'x 957, 959–60 (11th Cir.2007); *see also Bailey v. Astrue,* 5:11–CV–3583–LSC, 2013 WL 531075 (N.D.Ala. Feb. 11, 2013).

The ALJ must consider all of the relevant evidence in assessing the claimant's functional limitations, including

> medical history, medical signs and laboratory findings, the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication), reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured living

4

environment, and work evaluations, if available.

SSR 96–8p at *4–*5. However, the ALJ is not required to "specifically refer to every piece of evidence in his decision," so long as the decision is sufficient to show that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir.2005); *see also Castel,* 355 F. App'x at 263.

The ALJ must clearly articulate the weight he affords to each item of evidence and the reasons for the decision so that the reviewing court can determine whether his ultimate decision is based upon substantial evidence.  *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir.1981).

If the ALJ finds the claimant can do unlimited types of work at a given exertional level, he does not need to use a vocational expert to determine what kinds of work a claimant can do on the national level.  The ALJ is able to use administrative notice and apply the grids, to determine that work exists in significant numbers in the national economy that the claimant is capable of completing. *Welch v. Bowen*, 854 F.2d 436, 438-39 (11th Cir. 1988); *see also Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981).  However, the ALJ may not rely on the grids if the claimant has non-exertional impairments that limit basic working skills. *Francis v. Heckler*, 749 F.2d, 1562, 1566 (11th Cir. 1985); *see also Broz v. Schweiker*, 677 F.2d 1351, 1361 (11th Cir. 1982).

"'Sedentary work' involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a), [20 C.F.R. §

416.967(a)].  Social Security Ruling 83-10 elaborates on the definition of sedentary by providing

that "'[o]ccasionally' means occurring from very little up to one-third of the time," and that

"periods of standing or walking should generally total no more than about two hours of an eight

hour workday, and sitting should generally total approximately six hours of an eight hour

workday." *Kelly v. Apfel*, 185 F.3d 1121, 1213 n.2 (11th Cir. 1999).

The Commissioner must accord the opinions of the treating physician substantial or

considerable weight, and, unless recounting *good cause* to the contrary, the commissioner cannot

discount the treating physician's opinions. *Lamb v. Brown*, 847 F.2d 698, 703 (11th Cir. 1998).

Good cause exists if the physician's opinion is not supported by evidence; the evidence supports

a contrary finding; the physician's opinion is conclusory; or the physician's opinion is

inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41

(11th Cir. 2004); 20 C.F.R. § 416.927.

## V.  FACTS

The claimant was 46 years old at the time of the administrative hearing and had achieved

a high school education and completed three years of college. (R. 161, 166).  He previously

worked as a warehouse worker, counselor, football coach, pallet stacker, and an engine repairer.

(R. 175-82).  On appeal, the claimant disputed the ALJ's determination about the claimant's

residual functional capacity, the application of the grid guidelines rather than relying on

vocational experts, and the discrediting of the claimant's treating physician.

### *Physical Limitations*

On August 24, 2009, Dr. Fred Moss at Cooper Green Hospital conducted a lumbosacral

spinal exam on the claimant that revealed a shallow lumbosacral angel and lumbar lordosis,

which is curving of the lumbar region of the spine. (R. 251).

Dr. Willard Mosier treated the claimant on January 19, 2010 at Cooper Green Hospital. Dr. Mosier noted that the claimant's initial back injury occurred in 2003.  However, that episode began two to three weeks prior to the hospital visit.  The claimant complained of back pain that was severe, sharp, radiating, and burning pain; that was located in his lower back but radiated to his left buttock, left calf, and left thigh; and that worsened with movement.  His condition also caused muscle spasms, numbness and tingling in his legs and feet, and lower back pain.  Dr. Mosier reported that the claimant grimaced during the exam, could not raise his leg straight without severe pain, and could not sit or stand for prolonged periods of time.  He prescribed Toradol, Decadron, Predisone, Mobic, and Flexeril for the claimant's back condition.  Dr. Mosier instructed the claimant to call him if his pain worsened, take the medications, and use heat and cold compresses throughout the day. (R. 237-40).

On July 12, 2010, the claimant visited Dr. Shirley Jones at Cooper Green Hospital.  He reported back pain of a level six, and Dr. Jones denoted that the pain was in the claimant's lower back.  On August 5, 2010, after more complaints of back pain, Dr. Jones referred him to the urology clinic at Cooper Green Hospital. (R. 232).

On August 11, 2010 and September 13, 2010, the claimant sought treatment at the Urology Clinic at Cooper Green Hospital for a hematuria[1].  The report indicated that he had elevated blood pressure; lower back pain; hematuria; morbid obesity; degenerative disc disease; eczema; and an erectile dysfunction. (R. 229).  Dr. Shirley Jones ordered an MRI of the claimant's spine, specifically the lumbar region, from Cooper Green Hospital.  The MRI results

---

[1]The report did not include the name of the doctor at the urology clinic.

showed degenerative joint disease and lower back pain; degeneration of all his lumbosacral

disks, especially from L2-3 through L4-5, which showed a fifty percent loss of signal and height;

tender tears at L1, L2, L4-5; mild posterior bulges at the degenerated L2-3 through L4-5 discs;

joint arthropathy at L4-5; no spinal stenosis; and disk herniation around his abdomen.  Dr. Jones

concluded that the degeneration of the discs was most prominent from L2-3 through L4-5; that he

had tears at multiple levels; and that no evidence existed of disc herniation or stenosis. (R. 252).

On September 22, 2010 the claimant visited Dr. Jones for his back pain, which he reported was a

level five.  He said that he had experienced back pain since 2003 and that his pain was sharp;

went down his legs; was worst when cold; and made him weak and immobilized.  Dr. Jones

created a treatment plan for the claimant and ordered him to stay active and lose weight by

walking, swimming, and eating healthy; taking anti-inflammatory medications; using a heating

pad or ice packs for his pain; participating in physical therapy for strength and proper lifting; and

continuing use of medicines for his muscles that other physicians prescribed. (R. 228).

On August 29, 2010, Dr. Raymond Broughton at Cooper Green Hospital treated the

claimant for his back pain.  The claimant had sharp, lower back pain that began abruptly after a

vomiting episode.  The pain radiated to both his hips and down his right leg.  He expressed pain

from sitting, walking, or laying down; said that standing relieved his pain; and reported that he

felt no numbness, tingling, or weakness in either leg.  He experienced tenderness to palpation and

was unable to lie flat or raise his leg.  Pain medication only provided him temporary pain relief.

Dr. Broughton diagnosed him with a lumbar strain. (R. 241-45).

Physical therapist Herman Turner treated the claimant at Cooper Green Hospital from

October 2010 to November 2010.  On October 11, 2010, the claimant reported that he suffered

8

from level five back pain that prevented him from standing, walking, and doing activities that lasted for long periods of time.  Mr. Turner noted that the claimant had difficulty walking and he could only stand for forty minutes.  He assessed that the claimant would benefit from a progressive exercise program to enhance his mobility.  Mr. Turner created a plan for the claimant's next eight to ten physical therapy sessions that included heating his back; electrical stimulation; mobilization; core stabilization program; therapeutic exercise and activities; daily living activities; patient education; endurance training and activity tolerance; and gait training. The claimant continued to report back pain to Mr. Turner.  Mr. Turner noted that the claimant's function, mobility, and core stabilization were improved but he still experienced pain. (R. 219-26).

On December 7, 2010, J. Pugh completed a disability report on the claimant for the Disability Determination Service.  The claimant told Mr. Pugh that his rheumatoid arthritis, back problems, and post traumatic stress disorder limited his ability to work.  He reported that he was 6'1" and weighed 242 pounds; completed high school and three years of college; and stopped working on July 21, 2008 because of his medical conditions.  He listed employment from 2006 to 2008 as a coach, counselor, engine builder, machine set up man, and shipping clerk.  He reported that doctors at Cooper Green Hospital prescribed him Lorazepam, Prednisone, Sulfame Thoxazole, Tizanidine, and Tramadone.  The claimant also provided a brief history of his medical treatment.  From April 2002 to August 2003, Dr. Joe McWhorter at Forsyth Memorial Hospital in Winston Salem, North Carolina, treated the claimant for back pain and ultimately operated on the claimant's back; from 2003 to 2007 doctors at Maplewood Family Practice in Winston Salem, North Carolina treated him for back pain through medications and conducted an

MRI/CT scan of his back; and from July 2008 to December 2010 he visited Cooper Green Hospital in Birmingham for his back pain. (R. 163-69).

The claimant answered a work history report for the Disability Determination Service on December 20, 2010.  He provided information about his prior employment at the Ebenezer House, from February 2008 to July 2008, where he worked as a counselor; at USA Drugs, from some point in 2007 to January 2008, as a warehouse worker; at Tyson Food from November 2007 to July 2007, where he worked as a warehouse worker; at Winston Salem Forsyth County School from August 2005 to July 2007, as a football coach; at Piedmont Aviations, from May 2007 to July 2007, where he was an aircraft engine repairer; at Dell he was an Adecco Temp, September 2006 to February 2007, as a warehouse worker; at Trader Publishing from August 2005 to September 2006, as a warehouse worker; at Adams Mark from August 2003 to February 2004, as a hotel worker; and at Tractor Supply Company from April 2000 to November 2002 as a warehouse worker.  All of his employment required him to walk or stand for seven to eight hours a day. (R. 175-82).

On January 14, 2011, the claimant completed a drug and alcohol use questionnaire for the Disability Determination Service.  He explained that he did not use drugs and alcohol daily but he drank vodka on the weekends; he did not drink for days or weeks at a time without stopping; he recovered from his use of alcohol on the same day as he used alcohol; he experienced no blackouts from drinking; drinking left no affect on his ability to function because he ate, paid bills, cleaned his home, spoke on the phone, and maintained his appearance; and drinking did not limit his ability to socialize with others and never caused him to lose a job.  At age 27 he underwent drug treatment at the Veteran's Hospital in Salisbury, North Carolina. (R. 184-85).

10

On January 19, 2011, the claimant's mother, Phoebe Moore, completed an adult third party function report for the Disability Determination Service.  Ms. Moore wrote that she saw the claimant every day because they lived together.  She indicated that the claimant did not care for another person or animal.  Before his back pain, Ms. Moore wrote that the claimant could work, run, play sports, and walk; however, after the injury he could not squat or get up easily.  She also noted that the claimant's pain caused him to have nightmares and disturbed his sleep.  According to Ms. Moore, the claimant needed no reminders to take care of his personal hygiene or take medication; he prepared complete meals daily, but his condition caused him to sit down and take breaks; he cleaned the home twice a week; he went outside the home; he transported himself by walking or driving a car; he shopped in stores for groceries and clothes once a month; he managed his personal finances; he watched television and read for hobbies; and he attended church and sporting events once a week, but he did not like large crowds. (R. 186-90).  Ms. Moore indicated that the claimant's back pain affected his ability to lift, squat, bend, reach, walk, sit, kneel, climb stairs, and complete tasks.  She reported that the claimant could walk half a block before he needed to rest for a length of time determined by the severity of his pain.  She said the claimant could follow written and spoken instructions; got along well with authority figures; had never been fired for problems interacting with supervisors or coworkers; and sometimes handled stress and routine changes well, but sometimes he reacted poorly to environmental stresses and changes. (R. 191-93).

On January 27, 2011, Gail F. Johnson completed a vocational rationale form for the Alabama Disability Determination Service.  She classified the claimant as a younger individual,

under the age of forty-nine, who had completed high school.  Ms. Johnson indicated that the

claimant's residual functional capacity limitations from his evaluation were consistent with his

relevant work as a counselor, DOT # 354.377-014.  However, she left the rest of the form blank.

(194-96).  On the same day, Ms. Johnson completed a report of contact form on the claimant.

She noted that a psychiatric review technique form was unnecessary because the claimant's daily

living activities and his medical records indicated no mental impairment and he had no history of

mental health treatment or medication.  The claimant alleged rheumatoid arthritis, back

problems, and post traumatic stress.  She noted that the claimant lived with his family; cooked,

cleaned, and did other chores; drove; shopped; read and watched television; paid bills; needed no

reminders to do daily functions; maintained personal hygiene; and attended church.  She found

he had problems lifting, squatting, bending, reaching, walking, climbing stairs, and completing

tasks. (R. 197)

     T. Smith with the Disability Determination Service completed a prior filings disability

report on the claimant.[2]  The interviewer noted that the claimant's last insurance date was

December 31, 2013.  He also indicated that the claimant brought no medical evidence to the

office and the Disability Determination Service did not need to conduct capability development

assessment. (R.199-200).

     The claimant also completed a disability report appeal.[3]  His last disability report was on

January 27, 2011.  The claimant stated that around February 2011 his conditions worsened

because his back pain became more frequent and increased in severity.  He claimed that he was

---

[2]T. Smith did not include a date of completion of the disability report of prior filings.

[3]The report did not contain the name of the interviewer nor the date of the interview.

more physically impaired since the previous report because it was harder for him to walk, stand, or sit for any significant length of time.  The claimant also provided the names of his medication prescribed by physicians at Cooper Green Hospital: Lorazepam, Prednisone, Sulfame Toxazole, Tizanidine, and Tramadone.  He had not worked since his last disability report; he reported he could "hardly stand or walk"; and he had no further training or education since his last disability report nor participated in any vocational rehabilitation or employment services programs. (R. 201-05).  He answered a work background questionnaire[4].  He listed the same work history as he did on his work history report for the Disability Determination Service on December 20, 2010. (R. 209).

The claimant completed a recent medical treatment report where he stated that he had neither been treated by a doctor or hospitalized after June 7, 2012. (R. 210).  He provided a list of his medications and the dates on which they were prescribed.  In May 2004, Dr. Jones prescribed Propoxy-N APAP and Tramadol for pain relief; she also prescribed Mobic, an anti-inflammatory medication, in January 2010; she prescribed Predisone in January 2010, for anti-inflamation; she prescribed Cyclobenzaprine, a muscle relaxer, in January 2010; and she prescribed Hydrocodone in November 2011, for pain relief.  The claimant also took Aleeve for back pain; used icy hot patches for his back pain; and used muscle rub for his back pain. (R. 211).

On March 19, 2012, Dr. Marcia Lipinski completed a physical residual functional capacity for the claimant.  She diagnosed him with back pain, but the claimant initially complained of rheumatoid arthritis and other back problems.  Dr. Lipinski found, after reviewing the medical records from Cooper Green Hospital, that the claimant could occasionally lift twenty

---

[4]The report did not provide a date of completion.

pounds; frequently lift and carry ten pounds; stand or walk with normal breaks for six hours of an

eight hour workday; sit with normal breaks for six hours of a workday; and was unlimited in his

ability to push and pull things.  The claimant experienced frequent limitations climbing stairs,

balancing, kneeling, crouching, and crawling.  He was occasionally limited in climbing ladders,

ropes, or scaffolds and stooping.  Dr. Lipinski indicated that the claimant's medical record was

void of medical reports that outlined the claimant's physical capabilities.  (R. 256-64).

On June 1, 2012, Dr. Shirley Jones completed a physical capacities evaluation on the

claimant.  Dr. Jones opined that the claimant could lift and carry twenty pounds occasionally and

ten pounds frequently; could sit and stand for four hours out of an eight hour workday; needed no

device to help him move; and would likely be absent three days a month from employment

because of his physical impairments. The claimant could never bend or stoop; he could rarely

climb stairs, balance, and reach overhead; he could occasionally push and pull with his arms or

legs; and he could frequently do gross manipulation, grasping, twisting, handling, do fine

manipulation with his fingers, and operate motor vehicles.[5] (R. 274).

On the same day, Dr. Jones also completed a clinical pain assessment of the claimant's

lower back pain.  Dr. Jones determined that the claimant's pain would distract him from

sufficiently performing daily work activities; his pain greatly increased with physical activities

and would cause him distraction from tasks and prevent him from completing activities; and his

pain medication would cause him to become drowsy, have difficulty concentrating, and limit his

overall work effectiveness. (R. 275).

---

[5]According to the physical capacities evaluation, rare activities comprise one to five
percent of an eight hour workday; occasionally means six to thirty-three percent of a workday;
and frequently makes up thirty-four to sixty-six percent of an eight hour workday.

*ALJ Hearing*

After the Commissioner denied the claimant's request for disability, the claimant requested, and received, a hearing before an ALJ on July 12, 2012.  The claimant moved to change his onset date from July 21, 2008 to September 21, 2010 because an MRI on that date showed problems with his lumbar spine.  He felt the September 21, 2010 date more accurately represented the time he was disabled. (R. 29).

The claimant testified that he was born May 30, 1964 and graduated from high school. He lived with his mother, and his children, who were under the age of 18, lived with their biological mother.

The claimant reported that he had not worked since September 2010 and that his last employment was at Interco Print where he stacked the feeding machines with ads and bundles, drove forklifts, and set up the machines.  The heaviest weight the claimant lifted at Interco Print was fifty to sixty pounds.  The claimant also said that he worked at Tractor Supply Company where he pulled orders, drove a forklift, loaded trucks, and frequently lifted seventy-five to eighty pounds.  Lastly, he testified that he worked at Temporary Resources where he did temp work for Dell Computers, which required him to unload computers, load trucks, and stack pallets; he again frequently lifted fifty to sixty pounds. (R. 30-32).

The claimant testified that on a normal day he woke up; ate breakfast if his mother cooked; showered; laid down until his back hurt in that position; sat up and watched television until his back hurt from that position; walked around until his back hurt; and then laid down again.  He said that he had to alternate his body position throughout the day.  The claimant said that an accident at Tractor Supply Company injured his back in 2003.  He had surgery and was

involved in a Worker's Compensation claim that was settled prior to his disability claim.  The claimant testified that the surgery alleviated his pain immediately afterwards, but it later worsened and concentrated in his lower back, hips, and legs.  The claimant had to stand during his testimony because of his pain. (R. 32-34).

The claimant reported that in 2010 he participated in ineffective physical therapy for his back.  He estimated that his pain averaged six to seven on a ten point pain scale.  He said that he took pain medication, primarily Lortab 7.5 daily, but his medication made him drowsy and prevented him from driving. (R. 37).  The claimant testified that he laid down, on average, twice throughout the day for four to six hours during a typical eight hour workday.  He said that he could stand for fifteen to twenty minutes until his back started hurting; walk for two blocks before resting; sit for twenty to thirty minutes on a good day; and carry a gallon of milk.  Four or five days a month, the claimant testified, he did not feel like getting out of bed because of his pain. (R. 34-37).

The ALJ questioned the claimant about doctors' recommendations for more surgery to correct his back pain.  The claimant responded that no doctors advised him to undergo more operations. (R. 38).

Next, the ALJ questioned a vocational expert, Debra Civils, about the claimant's work history and potential.  The vocational expert explained that the claimant had three past relevant work experiences as a set making machine operator, a light, semiskilled position; pallet stacker, heavy and semiskilled labor; and a warehouse worker, a medium, unskilled position.  (R. 38-39).  Next, the ALJ asked Ms. Civils if the claimant's exertional limitations, as assessed by Dr. Jones, regarding lifting, standing, walking, and sitting were inconsistent with competitive employment.

16

The vocational expert responded that both his exertional and nonexertional limitations would not impede sedentary, competitive employment.  Ms. Civils articulated that employers allowed one absence per month; if the claimant had more absences he could not sustain employment.  The ALJ asked the vocational expert to evaluate the claimant's pain from a vocational standpoint.  She determined that pain higher than a level six would inhibit the claimant's employment because he would not be able to maintain attention, concentration, persistence, or pace to complete tasks; however, if the claimant's pain was below a level six, he could complete tasks and maintain attention despite his pain. (R. 39-40).

*ALJ Opinion*

The ALJ held that the claimant was not disabled based upon the meaning of the Social Security Act from September 21, 2010 through the date of the decision. (R. 16).  First, the ALJ determined that the claimant met the insured status requirements of the Social Security Act through December 31, 2013.  Next, he recognized that the claimant had not engaged in substantial, gainful employment since September 21, 2010. (R. 18).  The ALJ found that the claimant suffered the following limiting, severe impairments: degenerative disc disease at L2-L3 and L4-L5, facet joint arthopathy, and obesity.

The ALJ found that the claimant's medical records did not support his allegations of debilitating post traumatic stress and rheumatoid arthritis conditions.  He determined that no medical evidence existed at all that could explain those conditions.  Further, the ALJ noted that the claimant stated at the hearing that his back pain impaired his ability to work. (R. 18).  Next, the ALJ evaluated the claimant's medical history and determined that it did not satisfy the severity required by listing 1.04, spinal disorders.  He also pointed out that none of the claimant's

17

doctors or evaluators for the Disability Determination Service indicated that the claimant had impairments that would satisfy the spinal disorder listing. (R. 18).

The ALJ found that the claimant had the residual functional capacity to perform a full range of sedentary work.  In making this determination, the ALJ first evaluated the claimant's testimony about his ability to work.  The ALJ reported that the claimant testified that he experienced back problems since his on-the-job injury that produced pain; that the pain was in his lower back and went into a leg; and that he had to alternate positions from sitting, standing, and lying down during the day.  The ALJ also noted that the claimant stated he participated in ineffective physical therapy in 2010; his pain was a six to seven out of ten; he laid down six hours of the day; he could only stand for fifteen to twenty minutes at a time; he could walk only two blocks at a time; he could only sit for twenty to thirty minutes at a time; he could not carry a gallon of milk because of pain; he could not drive on his pain medication; and he could not get up four to five days a month because of the pain. The ALJ opined that the claimant's medically determinable impairments could reasonably cause the claimant's alleged symptoms.  However, the ALJ found that the claimant's testimony about the intensity, persistence, and limiting effects of the symptoms was not credible because it was inconsistent with the totality of his medical records. (R.18).

The ALJ held that the medical evidence did not support the disabling nature of the claimant's testimony of pain and limitations. The ALJ acknowledged that the claimant's MRI of his lumbar spine showed abnormalities and that the physical therapy was ineffective.  The ALJ noted that the claimant's treating physician, Dr. Shirley Jones, gave an opinion that was partially supportive of the finding that the claimant could do a full range of sedentary work.  However, he

18

found that the rest of Dr. Jones' opinion about the claimant's exertional abilities, which the vocational expert used to determine that the claimant could do sedentary work, undermined the claimant's allegations that he experienced limitations in lifting, sitting, standing, and walking. (R. 18-19).  Further, the ALJ cited the vocational expert's testimony that the claimant's non-exertional limitations did not prevent him from doing sedentary work.  The ALJ noted that Dr. Jones assessed that the claimant's probable absences and pain at work would preclude the claimant from working; yet the ALJ determined that Dr. Jones' treating notes did not support those findings because the claimant only reported pain on September 21, 2011.  Further, he recalled that the vocational expert testified that someone can work at a pain level of six and not be distracted by the amount of pain they experience.  The ALJ also noted that on September 24, 2010, the claimant's pain only registered as a five and the treatment plan, crafted by Dr. Jones, included staying active, physical therapy, and heating or ice pads as needed.  The ALJ evaluated that on September 30, 2010, the claimant said that his pain was a two out of ten.  Outside of Dr. Jones' reports, the ALJ found that the claimant's medical record, as a whole, did not support his claims. (R. 19).

The ALJ cited a function report from January 2011 that indicated that the claimant could cook, clean, go outside, drive, shop, and attend church and sporting events as evidence that the claimant could do sedentary activities without severe pain or needing to lie down for hours during the day. (R. 20).

The ALJ evaluated whether the claimant's obesity affected his ability to perform routine movement and physical activity in a work environment.  The ALJ concluded that the claimant was obese at 6 feet 1 inch high weighing 240 to 255 pounds.  The ALJ noted that the obesity did

not inhibit any of the claimant's movements nor prevent him from participating in sedentary activity.  Thus, the ALJ determined that his obesity was not severe enough to interfere with the claimant's exertional abilities required for sedentary employment. (R. 20.)

The ALJ considered the opinions of all the healthcare professionals that interacted with the claimant, as well as the claimants' mother's third party function report.  The ALJ gave their opinions great weight only to the extent that they were consistent with the totality of the medical record.  He gave Dr. Marcia Lipinski's assessment little weight in light of Dr. Shirley Jones' medical source statement because Dr. Jones was the claimant's treating physician who saw him multiple times.  However, the ALJ gave part of  Dr. Jones' opinion little weight.  He credited her opinion about the claimant's exertional capabilities, but discredited her statements relating to his work absences and pain levels because her treating notes did not support her position. (R. 20-21).

The ALJ determined that the claimant could not perform any past relevant work because the demands of those positions—a set making machine operator, a stacker, and a warehouse worker—exceeded his residual functional capacity.  He noted that the claimant was forty-six years old and had a high school education.  The ALJ opined that, based upon the claimant's residual functional capacity, the claimant could complete a full range of sedentary work.  The ALJ held that the claimant was not disabled based upon his age, education, work experience, and residual functional capacity. (R. 22).

## VI.  DISCUSSION

### 1. *The use of a function-by-function assessment to determine the claimant's RFC*

The claimant argues that the ALJ's decision should be remanded because he did not include a function-by-function residual functional capacity evaluation.  However, this court finds

that the ALJ acted within his bounds and properly determined the claimant's RFC.

Social Security Ruling 96–8p dictates that an RFC assessment must first determine the claimant's functional limitations and then address the claimant's ability to work on a function-by-function basis, according to the functions provided in 20 C.F.R § 404.1545 paragraphs (b), (c), and (d) and § 416.945.  The ALJ does not need to enumerate every piece of evidence or function used in his determination, but rather must simply show that he considered the claimant's medical condition in totality. *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir.2005); *see also Castel,* 355 F. App'x at 263. Once the ALJ has made that determination, the RFC may then be expressed in terms of exertional levels such as sedentary, light, medium, heavy, and very heavy. SSAR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see Castel v. Comm'r of Soc. Sec.,* 355 F. App'x 260, 263 (11th Cir. 2009); *Freeman v. Barnhart,* 220 F. App'x 957, 959–60 (11th Cir.2007); *see also Bailey v. Astrue,* 5:11–CV–3583–LSC, 2013 WL 531075 (N.D. Ala. Feb. 11, 2013).

The ALJ must clearly articulate the weight he affords to each item of evidence and the reasons for the decision so that the reviewing court can determine whether his ultimate decision is based upon substantial evidence. *Cowart v.  Schweiker,* 662 F.2d 731, 735 (11th Cir.1981).  So long as the ALJ properly conducted an RFC analysis that weighed the totality of the claimant's medical records, this court may defer to the ALJ's conclusions about the claimant's residual functional capacity. *Castel*, 355 F. App'x at 263.  If an impairment is established, the ALJ must consider all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms, in addition to the medical signs and laboratory findings in deciding the issue of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  If the ALJ decides not to credit

21

such evidence, he must discredit it explicitly, and articulate explicit and adequate reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

A claimant can only do sedentary work if he cannot lift more than ten pounds at a time. Sedentary work limits walking and standing to two hours of the workday; sitting to six hours of the day; and lifting to up to ten pounds. 20 C.F.R. § 404.1567(a), [20 C.F.R. § 416.967(a)]; *Kelly v. Apfel*, 185 F.3d 1121, 1213 n.2 (11th Cir. 1999).

In this case, the ALJ conducted a functional analysis of the claimant's RFC.  The ALJ began by evaluating the claimant's testimony.  He summarized the claimant's testimony that he alternated standing, sitting, and lying down during the day; injured his back at work; had surgery on his back because of his injury; experienced pain in his lower back and leg; underwent ineffective physical therapy; took pain medication for pain that averaged between a six to seven; laid down for six hours out of an eight hour workday; stood for no more than fifteen to twenty minutes during the day; sat for twenty to thirty minutes at a time; and aggravated his pain by lifting an item such as a gallon of milk.  This summary of the claimant's testimony led the ALJ to determine that the claimant's medically determinable impairments could reasonably cause the symptoms he alleged.

The ALJ properly determined that the claimant's subjective statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with his medical record.  The ALJ noted that an MRI conducted at Cooper Green Hospital showed that he had degnerative disc disease and other back problems, according to Dr. Shirley Jones. (R. 19, 252). He also observed that the claimant participated in physical therapy in 2010 at Cooper Green Hospital that proved to be ineffective. (R. 19, 219-26).  However, the ALJ evaluated that the

22

claimant's treating physician, Dr. Shirley Jones at Cooper Green Hospital found that the claimant could lift and carry ten pounds frequently; sit and stand for four hours; needed no ambulation assistance; could occasionally push and pull; could frequently do gross manipulation; and operate vehicles. (R. 274).  The ALJ observed that the vocational expert testified that these abilities would not prevent the claimant from participating in sedentary work activities. (R. 20, 39).  He cited the claimant's visits to Dr. Jones where he reported pain levels of five and six. (R. 20, 232, 228).  The ALJ noted that the vocational expert testified that a claimant with a pain level of six or below could work. (R. 20, 41).  This, coupled with the third party function report completed by the claimnant's mother, Phoebe Moore, which stated that the claimant could clean, cook, drive, shop, and attend church, led the ALJ to determine that the claimant could do at least sedentary work activities. (R. 20, 186-93).

From his analysis of the claimant's medical record, the ALJ assessed the claimant's physical limitations.  The ALJ evaluated the totality of the medical records, including two functional reports issued by the claimant's treating doctor and a state medical examiner.  He then determined, based upon the greater weight of the claimant's medical history, that a sedentary

The ALJ considered healthcare professionals' opinions as well as the claimant's mother's opinion.  He gave little weight to the opinion of Dr. Marcia Lipinski, who found the claimant could stand or walk for six hours a day, which he classified as light exertional work because she only saw the claimant once.  Dr. Jones, the claimant's treating doctor, saw him multiple times. (R. 20, 258).  However, the ALJ gave part of Dr. Jones' assessment little weight because her opinion that the claimant's pain and absences from work would prevent him from maintaining employment were not supported by her treating records. (R. 21, 275).

From his analysis of the claimant's medical record, the ALJ assessed the claimant's physical limitations.  The ALJ evaluated the totality of the medical records, including two functional reports issued by the claimant's treating doctor and a state medical examiner.  He then determined, based upon the greater weight of the claimant's medical history, that a sedentary

residual functional capacity would not aggravate the claimant's pain and would allow him to handle the side effects of his pain medication. (R. 21).

The court finds that the ALJ properly based his RFC assessment of the claimant's ability to do basic work functions, outlined by Social Security Ruling 96-8, on substantial evidence from the entirety of the claimant's medical records.

2.  *Application of the grid guidelines rather than relying on vocational expert testimony*

The claimant also argues that the ALJ improperly excluded testimony from the vocational expert from his opinion and improperly applied the grids to determine that a significant number of jobs exist in the national economy that the claimant could perform.  The court disagrees.

If the claimant is unable to do past relevant work, the ALJ must determine if the claimant can perform other work. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); *see also Crayton v. Sullivan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The ALJ is not required to rely on a vocational expert to outline employment opportunities if the claimant can complete a full range of work at any exertional level.  The ALJ can apply the grid guidelines to determine if the claimant can do employment that exists in significant numbers in the national economy. *Welch v. Bowen*, 854 F.2d 436, 438-39 (11th Cir. 1988); *see also Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981).

The court has verified that the ALJ's RFC determination was appropriately assessed as a full range of sedentary work because the ALJ considered the totality of the claimant's medical record and evaluated his doctors' opinions.  Thus, because the ALJ found that the claimant was able to complete a full range of sedentary labor, with no non-exertional limitations, the ALJ can use the grids rather than testimony from the vocational expert to determine work exists that the

24

claimant can do.  The ALJ applied the residual functional capacity for a full range of sedentary

work and considered the claimant's age, education, and work experience to Medical-Vocational

Rule 201.21 and found that the claimant was not disabled. (R. 22).  Therefore, the claimant is

able to do any sedentary job without any sort of disabling limitation.

3.  *Discrediting the claimant's treating physician*

Finally, the claimant argues that the ALJ did not properly consider the opinion of the

claimant's treating physician, Dr. Shirley Jones, about his work capabilities.  The court disagrees

because substantial evidence supports the ALJ's evaluation of Dr. Jones' opinion.

The court's limited review precludes reweighing evidence anew.  *Dyer*, 395 F.3d at 1210.

Where the ALJ articulated specific reasons for failing to give the opinion of the treating

physician controlling weight and those reasons are supported by substantial evidence, no

reversible error occurs. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

The ALJ credited Dr. Jones' opinion in part and discredited her opinion in part.  He

credited her opinion surrounding the claimant's exertional capabilities.  However, the ALJ

discredited Dr. Jones' evaluation regarding the claimant's pain levels and absences from

potential future employment.  He noted that Dr. Jones determined the claimant's pain, at a level

six, would distract him from working and would cause him to frequently be absent from work.

The ALJ relied on vocational expert testimony that a pain level of six or less would not cause the

claimant to lose focus or become unable to work.  Further, the ALJ observed that the treatment

plan Dr. Jones created for the claimant did not indicate that the claimant's pain was debilitating

because it included staying active, using ice, and doing physical therapy.  The ALJ correctly

determined that substantial evidence, particularly from Dr. Jones' treating records and the

vocational expert's testimony, did not support Dr. Jones' opinion about the claimant's pain and work absences.

### VII.  CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED.  The court will enter a separate Order to that effect simultaneously.

DONE and ORDERED this 26th day of February, 2015.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE

26